UNITED STATES DISTRICT COURT

DISTRICT OF OREGON   FILED31 JAN'13 10:55USDC-ORP

PORTLAND DIVISION

Case No: 3:13-cr-00044-KI

UNITED STATES OF AMERICA,

v.

PETER C. BYRNE,

                Defendant.

**INDICTMENT**

Title 18 U.S.C. § 641
(Theft of Government Funds)

Title 18 U.S.C. § 1001
(False Statements)

Title 18 U.S.C. § 1343
(Wire Fraud)

Title 18 U.S.C. § 981(a)(1)(C)
Title 28 U.S.C. § 2461(c)
(Forfeiture Allegation)

THE GRAND JURY CHARGES:

<u>COUNT 1</u>
[Wire Fraud]

I.    **INTRODUCTION**

    1.    At all times material and relevant herein, defendant **PETER C. BYRNE** was residing in Oregon, California and outside the United States.

    2.    At all times material and relevant herein, the Social Security Administration was a department and agency of the United States, with headquarters located in Baltimore, Maryland.

3. At all times material and relevant herein, Supplemental Security Income was a needs-based, welfare benefit, funded by the United States Treasury and administered by the Social Security Administration.

4. At all times material and relevant herein, Supplemental Nutrition Assistance Program benefits, also known as "food stamps", were a needs-based, welfare benefit, funded by the United States Department of Agriculture in accordance with the Food Stamps Act of 1977, and administered by the Oregon Department of Human Services (DHS).

## II.   THE SCHEME TO DEFRAUD

5. Beginning in or before October 1990, and continuing through April, 2012, in the District of Oregon and elsewhere, defendant **PETER C. BYRNE,** devised and intended to devise a material scheme and artifice to defraud the Social Security Administration, and the Oregon Department of Human Services and to obtain money and property by means of material false and fraudulent pretenses, representations and promises.

6. In or before October 1990, as part of the material scheme and artifice to defraud, defendant **BYRNE** applied for Supplemental Security Income (SSI) benefits.

7. Between October 1990 and April 2012, based on **BYRNE'S** representations, **BYRNE** was determined to be eligible for SSI benefits and was advised by SSA of his duties and responsibilities to report to SSA any income, compensation, and travel outside of the United States that lasted more than 30 days.

8. Between October 1990 and April, 2012, as part of the material scheme and artifice to defraud, defendant **BYRNE** failed to truthfully disclose to the Social Security Administration

that he was receiving funds from organizations and others, and that he was remaining outside of the United States for more than 30 days.

9. In or between January 27, 1992 and March 4, 1992, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

10. In or about March 1996, defendant **BYRNE** opened a bank account with Bank of America, and caused the Social Security Administration to directly deposit the benefits he was receiving to that account.

11. In or between December 5, 1996 and January 8, 1997, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

12. In or between January 20, 1998, and March 4, 1998, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

13. In or between February 7, 2000, and March 9, 2000, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

14. In or between March 13, 2001, and April 22, 2001, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

15. In or between October 27, 2001, and December 29, 2001, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

16. In or between February 15, 2002, and March 31, 2002, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

17. In or between October 26, 2002, and December 15, 2002, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

18. In or between November 1, 2003 and March 12, 2004, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

19. In or between November 1, 2005 and December 27, 2005, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States.

During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

20. In or between January 27, 2006 and April 3, 2006, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

21. In or between March 27, 2007 and May 22, 2007, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

22. In or between December 11, 2007 and April 21, 2008, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

23. On or about May 7, 2008, as part of the material scheme and artifice to defraud, defendant **BYRNE** applied for food stamps benefits through the Oregon Department of Human Services and was advised of his duty and responsibility to truthfully disclose his assets and resources.

24. In or between January 27, 2009 and March 12, 2009, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

25. In or between April 2009, and February 2012, as part of the material scheme and artifice to defraud, defendant **BYRNE** maintained a bank account at Wells Fargo bank, and failed to disclose this bank account and its value to the Social Security Administration or the Oregon Department of Human Services.

26. In or between April 2009, and February 2012, as part of the material scheme and artifice to defraud, defendant **BYRNE** maintained a bank account with the Barclays of England bank, and failed to disclose this bank account and its value to the Social Security Administration or the Oregon Department of Human Services.

27. In or between February 21, 2010 and April 6, 2010, as part of the material scheme and artifice to defraud, defendant **BYRNE** remained outside of the United States. During that time, and thereafter, defendant **BYRNE** failed to advise the Social Security Administration that he had resided outside of the United States for more than 30 days.

28. On or about July 1, 2011, in the District of Oregon, defendant **PETER C. BYRNE,** for the purposes of executing the aforementioned material scheme and artifice to defraud, and attempting to do so, did knowingly cause to be transmitted in interstate commerce by means of wire communications, signals and sounds, for the purpose of executing such scheme and artifice, to wit: **BYRNE** caused electronic communications to move across state lines by causing benefits administered by the Social Security Administration in Baltimore, Maryland, to be electronically deposited into his Bank of America bank account in Oregon.

All in violation of Title 18, United States Code, Section 1343.

///

///

## COUNT 2
[Theft of Government Funds]

In or before January 1992, and continuing through January 2012, within the District of Oregon, **PETER C. BYRNE,** defendant herein, did knowingly and willfully steal and convert to his own use, money administered by the Social Security Administration, a department and agency of the United States, to wit: by receiving Supplemental Security Income and medical benefits in an amount greater than $1,000.00, based on fraudulent representations and concealments, all in violation of Title 18, United States Code, Section 641.

## COUNT 3
[Theft of Government Funds]

In or before May 2008, and continuing through April 2012, within the District of Oregon, **PETER C. BYRNE,** defendant herein, did knowingly and willfully steal and convert to his own use, money administered by the Oregon Department of Human Services, a department and agency of the United States, to wit: by receiving Supplemental Nutrition Assistance Program benefits, also known as "food stamps", in an amount greater than $1,000.00, based on fraudulent representations and concealments, all in violation of Title 18, United States Code, Section 641.

## COUNT 4
[False Statement to a Government Agency]

On or about November 25, 2010, within the District of Oregon, **PETER C. BYRNE,** defendant herein, in a matter within the jurisdiction of the Oregon Department of Human Services, knowingly and willfully caused a written statement to be submitted, knowing that the statement was untrue and material to the agency's determination of Byrne's continued eligibility for food stamps benefits. Specifically, defendant **PETER C. BYRNE** falsely asserted that he

had only one bank account and did not truthfully disclose his resources; all in violation of Title 18, United States Code, Section 1001.

### COUNT 5
[False Statement to a Government Agency]

On or about February 6, 2012, within the District of Oregon, **PETER C. BYRNE,** defendant herein, in a matter within the jurisdiction of the Social Security Administration, knowingly and willfully caused a written statement to be submitted, knowing that the statement was untrue and material to the agency's determination of Byrne's continued eligibility for Supplemental Security Income benefits. Specifically, defendant **PETER C. BYRNE** falsely asserted that he had not purchased or transferred property; all in violation of Title 18, United States Code, Section 1001.

### FORFEITURE ALLEGATION

Upon conviction of the offenses alleged in Counts 1, 2 and 3, of this indictment, **PETER C. BYRNE,** defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said violation.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

Dated this 29 day of January, 2013.

A TRUE BILL.

_____
OFFICIATING FOREPERSON

Presented by:

S. AMANDA MARSHALL, OSB No. 953473
United States Attorney
District of Oregon

_____
HELEN L. COOPER, OSB No. 871957
Special Assistant United States Attorney